# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>SEAN ALEXANDER TENNISON (14),<br><br>Defendant. | Case No. 17-20038-14-DDC |

## MEMORANDUM AND ORDER

On November 12, 2019, a jury convicted defendant Sean Alexander Tennison of two counts in the Superseding Indictment: Count 1, conspiracy to distribute more than 50 grams of methamphetamine, and Count 20, knowing and intentional possession of more than 50 grams of methamphetamine with intent to distribute it.[1] Doc. 637. This matter comes before the court on Mr. Tennison's Motion for New Trial (Doc. 644). The government has responded (Doc. 695). For reasons explained below, the court denies the motion. In short, the government presented evidence sufficient for a rational juror to find Mr. Tennison guilty beyond a reasonable doubt and Mr. Tennison has failed to show that the ends of justice require a new trial.

### I. Factual and Procedural Background

This case involved a conspiracy to distribute methamphetamine in Kansas City, Kansas. The investigation of the conspiracy revealed that a drug trafficking organization ("DTO") distributed methamphetamine to many individuals, including Mr. Tennison. These individuals, in turn, would use or sell the methamphetamine they acquired from the DTO. In Count One of

---

[1] At the close of the government's case, Mr. Tennison orally moved for acquittal under Fed. R. Crim. P. 29. After considering the evidence admitted and the parties' arguments, the court denied this motion.

the Superseding Indictment, the Grand Jury charged that between July 1, 2016, through on or about August 23, 2017, 21 defendants, including Mr. Tennison, knowingly and intentionally conspired to distribute and possess with intent to distribute more than 50 grams of methamphetamine. *See* Doc. 98 at 2–3.

**A. The Evidence at Trial**

At trial, the government presented testimony from Drug Enforcement Administration Special Agent Brandon Burkhart, the lead case agent in the DEA's investigation of the DTO. Special Agent Burkhart's testimony consisted of background information about the scope and mechanics of the DEA's investigation into defendants' activities. This investigation began in July 2016 and continued until August 2017. During the investigation, the DEA used confidential informants and undercover officers to conduct controlled buys of methamphetamine from various defendants. Eventually, investigators applied for and received Title III wiretaps on eight telephones used by suspected members of the conspiracy.

The investigation revealed a DTO operating in the Kansas City metropolitan area. According to the government, the DTO's objective was selling and distributing high purity methamphetamine for profit. The methamphetamine was supplied by sources in Mexico. Alleged co-conspirators played various roles in the DTO, such as supervisors, dispatchers, translators, transporters, local couriers, buyers, and distributors. Transporters secured methamphetamine from sources in Mexico and the United States and transported it across several states to various points in the Midwest. These destinations included stash houses in Kansas City, Kansas. The DTO's members coordinated buys with local distributors. Local couriers transported orders to buyers after receiving instructions from the DTO's leaders. Investigators seized more than 20 kilograms of methamphetamine during the investigation.

Special Agent Burkhart testified that the investigation monitored phone calls between co-defendants Cynthia Rodriguez and Katrina Job on January 31, 2017. Ms. Job tried to broker a deal for a kilogram of methamphetamine for her friend, Sean Tennison, to buy. Ms. Rodriguez, who functioned as a seller, dispatcher, and translator, for the DTO reported that it didn't currently have a kilogram to sell. But, she continued, it could sell half of a pound to Ms. Job's friend. Ms. Job agreed and the parties decided on a time and place for the transaction that evening. Ms. Job testified that she picked up Mr. Tennison at the Isle of Capri Casino and drove him to the meeting place. Once there, Ms. Job communicated with Ms. Rodriguez to make contact with the drug couriers. One of the couriers got into the backseat of Ms. Job's truck, exchanged about 247 grams of methamphetamine for $2,500 cash provided by Mr. Tennison, and left. Ms. Job and Mr. Tennison then drove away.

Agents followed Ms. Job's car, finally pulling it over when it returned to the same casino. When Mr. Tennison left the car and officers patted him down, the package of methamphetamine fell out of his pants. A search incident to arrest also revealed that Mr. Tennison had $1,000 in cash on his person.

Both Special Agent Burkhart and Ms. Job testified about their experience with methamphetamine. Special Agent Burkhart testified that in his experience with admitted methamphetamine users, the daily use rate ranged from one to two grams per day. Ms. Job—a long-time meth user—testified about her personal experience with methamphetamine. She testified that she used between a quarter of a gram to one and one-half grams of methamphetamine per day. She considered herself an average user. Ms. Job also testified that she had purchased a kilogram of methamphetamine before and resold it. And, in her experience, people don't buy a kilogram of methamphetamine for personal use.

### B. Rule 404(b) Evidence

At trial, the government offered evidence from Mr. Tennison's arrest on February 14, 2018. Detective Logan Waterworth testified that he watched Mr. Tennison based on a tip from a confidential informant. Mr. Tennison had a federal warrant for his arrest based on the Indictment in this case. Detective Waterworth observed Mr. Tennison arriving in a silver Mercedes at an address given by the confidential informant. Members of the U.S. Marshals Service arrested Mr. Tennison in the front yard of the address. Mr. Tennison had a hypodermic needle in his pocket. He directed officers to give the keys to the Mercedes to a person inside the house.

Officers found syringes, digital scales, and baggies in plain view inside the Mercedes. Detective Waterworth testified that a search of the car revealed 1,200 grams of a substance field packaged in different amounts, additional scales, and other drug paraphernalia. The substance tested as methamphetamine. Detective Waterworth testified that these items are consistent with the sale of drugs.

No charges have been filed against Mr. Tennison based on the February 14, 2018 arrest. And, as Detective Waterworth admitted on cross-examination, no one officially verified ownership of the silver Mercedes.

### C. Jury Verdict at Trial

At the end of Mr. Tennison's seven-day jury trial, the jury convicted Mr. Tennison of conspiracy to distribute or possess with intent to distribute at least 50 grams or more of methamphetamine. Doc. 637. The verdict form was divided into two questions.

The first part of Question 1 asked whether the jury found Mr. Tennison guilty of the conspiracy charged in Count One. The form then directed the jury to answer the second half of

Question 1 if they answered "Guilty" on Count One. This second part asked the jury to determine the amount of methamphetamine personally handled by Mr. Tennison and handled by other co-conspirators that was "reasonably foreseeable to the defendant." *Id.* at 1. The jury found Mr. Tennison guilty of conspiracy and found that the methamphetamine personally handled by Mr. Tennison and the reasonably foreseeable amounts attributable to other members of the conspiracy was 50 grams or more. *Id.*

Question 2 of the verdict form also had two parts. First, it asked whether Mr. Tennison was guilty of possession of methamphetamine with intent to distribute as charged in Count 20. Then, if and only if the jury answered "not guilty" on the first half of Question 2, the jury was instructed to consider whether Mr. Tennison was guilty of the lesser included offense of possession of a controlled substance. The jury found Mr. Tennison guilty of the crime charged in Count 20. *Id.* at 2. So, consistent with the instruction in the verdict form, the jury did not return a verdict for the lesser included offense. *Id.*

## II. Legal Standard

A court may grant a motion for new trial "if the interest of justice so requires." Fed. R. Crim. P. 33(a). While Rule 33 does not say so explicitly, courts long have recognized that a defendant may seek a new trial on the ground that the verdict is against the weight of the evidence. 3 Charles Alan Wright et al., *Federal Practice and Procedure* § 582 (4th ed.); *see United States v. Galvan-Estrada*, 494 F. App'x 898, 901 (10th Cir. 2012). A district court should grant a Rule 33 motion "only in exceptional cases in which the evidence preponderates heavily against the verdict." *United States v. Cesareo-Ayala*, 576 F.3d 1120, 1126 (10th Cir. 2009). When a defendant alleges errors during the trial, courts must "balance the alleged errors

5

against the record as a whole and evaluate the fairness of the trial." *United States v. McBride*, 862 F.2d 1316, 1319 (8th Cir. 1988).

### III. Analysis

Mr. Tennison makes three arguments supporting his request for a new trial. The court addresses each one separately in parts A, B, and C, below. A closing analysis, in part D, considers the cumulative effect of the alleged errors.

### A. Was the verdict contrary to the evidence admitted?

Mr. Tennison argues the verdict was contrary to the evidence admitted on both the conspiracy charged in Count 1 and the possession of methamphetamine with intent to distribute charged in Count 20. The court already has concluded that the evidence presented at trial was sufficient to support Mr. Tennison's convictions on both charges when it decided Mr. Tennison's oral Rule 29 motion. Indeed, when deciding a motion under Rule 29, the court considers the evidence in the light most favorable to the government. *United States v. Magleby*, 241 F.3d 1306, 1311–12 (10th Cir. 2001). In a motion for a new trial, the court does not take the evidence in the light most favorable to the government, but the court should only grant a new trial if the "evidence preponderates heavily against the verdict." *Cesareo-Ayala*, 576 F.3d at 1126. The court considers Mr. Tennison's arguments, and the evidence presented, on both counts, below.

#### 1. Count 1: Conspiracy

Mr. Tennison claims the government did not present enough evidence to sustain a conspiracy conviction. To prove a conspiracy, the government was required to show: (1) an agreement to violate the law; (2) Mr. Tennison's knowledge of the conspiracy's objective; (3) Mr. Tennison's knowing and voluntary participation in it; and (4) interdependence among the conspirators. *United States v. Keck*, 643 F.3d 789, 794 (10th Cir. 2011). Mr. Tennison argues

6

that the evidence won't support the third element—knowing and voluntary participation in the conspiracy. Specifically, Mr. Tennison contends he "was convicted of conspiracy to distribute methamphetamine based on one buy from a member of the conspiracy who had to be a go-between" because other conspiracy members did not know him. Doc. 644 at 2.

"The law is clear a defendant need not know all the details or all the members of a conspiracy." *United States v. Caro*, 965 F.2d 1548, 1556 (10th Cir. 1992). And, "a defendant's participation in a conspiracy may be slight and may be inferred from the defendant's actions so long as the evidence establishes a connection to the conspiracy beyond a reasonable doubt." *Id.* The government provided evidence that Mr. Tennison participated in the conspiracy by purchasing methamphetamine from the DTO.

"[P]roof of the existence of a buyer-seller relationship, without more, is inadequate to tie the buyer to a larger conspiracy. . . ." *United States v. Watson*, 594 F.2d 1330, 1337 (10th Cir. 1979). And, while a single act can tie an individual to a larger conspiracy, "the single act must be one from which [knowledge of the broader conspiracy] may be inferred." *Id.* To infer intent from just one act, "it must be such as to show the actor's knowledge of the existence and scope of the conspiracy, and his belief that the benefit to be derived from his actions depends on the success of the acts of others." *Id.* (citing *United States v. Perry*, 550 F.2d 524, 529 (9th Cir. 1977)). While purchasing a limited quantity of drugs may not establish membership in a conspiracy, one can infer that a "major buyer" of a controlled substance understands that his purchase results from the interdependent work of a larger operation. *See United States v. Evans*, 970 F.2d 663, 673 (10th Cir. 1992) (citing *Watson*, 594 F.2d at 1340).

The evidence more than sustains the jury's verdict against Mr. Tennison. Specifically, the evidence supports the inference that Mr. Tennison initiated communications with one of the

DTO's members—Ms. Job—and then worked with her to negotiate a smaller purchase quantity. Then, he travelled with Ms. Job to complete the sale that she had negotiated with other members of the DTO on his behalf. The government's evidence unequivocally shows that Mr. Tennison purchased a "distribution quantit[y]" of methamphetamine from the DTO. *See United States v. Waterbury*, 206 F. App'x 805, 810–11 (10th Cir. 2006) (finding that 37.27 grams of methamphetamine was "consistent with distribution quantities"). That is, he purchased a quantity of methamphetamine large enough to create the presumption of intent to distribute. *Id.* Here, Mr. Tennison purchased 245 grams of methamphetamine from the DTO. And, a large purchase of drugs permits the inference that the buyer knew of the larger organization responsible for the purchase. *See Watson*, 594 F.2d at 1340 (A "major buyer" of drugs presumed to know "he is part of a wide-ranging venture, the success of which depends on performance by others whose identity he may not even know."). In sum, the interests of justice do not require the court to grant a new trial for this reason.

### 2. Count 20: Possession with Intent to Distribute

Mr. Tennison also asserts the evidence was insufficient for the jury to find him guilty on Count 20 because the government never introduced evidence that the methamphetamine he possessed on January 31, 2017 was a "distributable" quantity. Mr. Tennison argues that the government failed to produce expert testimony that a half-pound of methamphetamine was a distributable quantity. And, Mr. Tennison argues, "the best the government could do was that it 'might be' a distributable quantity. It also might not." Doc. 644 at 2.

The government introduced evidence of the amount of methamphetamine Mr. Tennison originally tried to buy from the drug trafficking organization: 1,000 grams. Although he did not succeed, he didn't succeed only because the DTO's inventory was running low. And, he still

purchased 247 grams. The government presented testimony from Mr. Tennison's co-conspirator, Katrina Job, as well as DEA Agent Burkhart. Agent Burkhart testified about his experience with methamphetamine users. He testified that, based on that experience, most methamphetamine users use between one and two grams per day. Ms. Job testified about her personal methamphetamine use and her typical daily dosage level. She testified that her personal usage could vary between less than one gram to two grams per day. The jury heard testimony that 1,000 grams—the amount of methamphetamine Mr. Tennison first sought—is equivalent to 500 days of usage.

Also, contrary to Mr. Tennison's contention, the government was not required to offer evidence from an "expert" to define a distribution quantity of methamphetamine. Fed. R. Evid. 701 permits the use of a "lay opinion" if it is adequately supported by the witness's perception, "helpful to clearly understanding the witness's testimony" or to determine a fact in issue, and is "not based on scientific, technical, or other specialized knowledge." Fed. R. Evid. 701. Here, the government introduced evidence from an actual methamphetamine user, Ms. Job, who testified about her own experience with methamphetamine use. Mr. Tennison did not cite any support—nor could the court locate any—for his argument that the government must have put on an "expert" qualified under Fed. R. Evid. 702. To the contrary, cases from other Circuits have found lay witness testimony about typical methamphetamine use was sufficient evidence to establish distribution quantity. *See, e.g.*, *United States v. Sanchez*, 789 F.3d 827, 831, 831 n.3 (8th Cir. 2015) (describing testimony and collecting cases). The court rejects Mr. Tennison's argument about the need for an expert witness.

The evidence presented showed that Mr. Tennison first tried to buy 1,000 grams of methamphetamine, or at least 500 daily dosage units. And, though he only purchased 247 grams

9

of methamphetamine—some 123 days' worth of methamphetamine—the evidence supports the inference that he purchased the amount with intent to distribute it. The interests of justice do not require the court to grant a new trial for this reason.

### B. Did the court err in admitting evidence under Fed. R. Evid. 404(b)?

Mr. Tennison argues the court erred when it admitted evidence from his February 14, 2018 arrest because it was "overwhelmingly prejudicial." Doc. 644 at 3. He contends the "evidence introduced by the government amounted simply to allegations the defendant was driving a car in which methamphetamine was located." *Id.* And, defendant asserts, because he never was charged with a crime, the government "bypassed" his "constitutional rights to assert proof beyond a reasonable doubt." *Id.* at 3–4.

The decision to admit or exclude evidence is committed to the trial court's discretion. *United States v. Watson*, 766 F.3d 1219, 1234 (10th Cir. 2014). Under this standard, an appellate court "will not disturb [the trial court's] ruling absent a distinct showing it was based on a clearly erroneous finding of fact or an erroneous conclusion of law or manifests a clear error of judgment." *Id.* But, even if an evidentiary ruling meets this standard to constitute error, the reversal of a defendant's conviction is required only if the error "affect[s] substantial rights" and "result[s] in actual prejudice." *See United States v. Richter*, 796 F.3d 1173, 1197 (10th Cir. 2015) (explaining that error "which does not rise to [this] magnitude is harmless" (citations and internal quotation marks omitted)). To decide this question, the court considers whether "an error has a substantial influence on the outcome of a trial or leaves one in grave doubt as to whether it had such effect." *Id.* (*citing United States v. Medina-Copete*, 757 F.3d 1092, 1108 (10th Cir. 2014)).

Under Federal Rule of Evidence 404(b), "[e]vidence of a crime, wrong, or other act" may be admitted to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Tenth Circuit law allows admission of "evidence of other crimes, *wrongs, or acts* [that] arise from conduct that occurs *after* the charged offense" under Rule 404(b). *United States v. Mares*, 441 F.3d 1152, 1157 (10th Cir. 2006) (first emphasis added) (internal quotations omitted). Neither a charge nor conviction is required for evidence to be admitted under this standard. *Id.*; *United States v. Robinson*, 978 F.2d 1554, 1560–61 (10th Cir. 1992) (concluding the lower court properly considered circumstances of prior arrest as "probative on the subject of intent and knowledge"). Mr. Tennison provides no authority to support his argument. A charge or conviction is not a prerequisite to Rule 404(b) admissibility. Thus, his position is wrong.

But the Rule 404(b) evidence must meet certain factors. They include whether (1) proof of the act is offered for a proper purpose, (2) the act is relevant, (3) the act's probative value substantially outweighs the potential for unfair prejudice, and (4) a limiting instruction can cure any unfair prejudice. *United States v. Davis*, 636 F.3d 1281, 1297–98 (10th Cir. 2011); *see also Huddleston v. United States*, 485 U.S. 681, 691–92 (1988) (explaining standard for admission of evidence under Rule 404(b)). The court examines each factor, in turn.

*First*, the evidence must be offered for a proper purpose under Rule 404(b). That is, to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b). Here, the government offered evidence about the circumstances of Mr. Tennison's February 2018 arrest to show his intent on January 31, 2017. When arrested, Mr. Tennison's car contained 1,200 grams of methamphetamine, which was divided into smaller quantities. Scales and other paraphernalia were found near the drugs. The

11

government contends the February 2018 arrest evidence shows that Mr. Tennison purchased methamphetamine to resell it to others. The court finds this evidence served a proper purpose under Rule 404(b).

*Second*, the evidence must be relevant. "Relevant evidence tends to make a necessary element of an offense more or less probable." *Davis*, 636 F.3d at 1298. But "subsequent conduct . . . must share similarity with the charged crime" though "it need not be identical." *Mares*, 441 F.3d at 1157 (first citing *United States v. Zamora*, 222 F.3d 756, 762 (10th Cir. 2000), then citing *United States v. Gutierrez*, 696 F.2d 753, 755 (10th Cir. 1982)). The court considers four "non-exclusive" factors to assess this similarity requirement. *Id.* at 1158. These factors are: (1) "whether the acts occurred closely in time," (2) "geographical proximity," (3) "share[d] similar physical elements" between the two acts, and (4) whether the two acts share a "common scheme." *Id.* Here, Mr. Tennison's arrest in February 2018 was a little more than a year after the events on January 31, 2017—the evening of his drug purchase from the DTO at issue here. *See id.* (evidence of arrest for similar offense one year after charged offence properly admitted). Both events share geographical proximity: both occurred in the Kansas City metropolitan area. They shared physical elements and a common scheme—both involved Mr. Tennison's possession of significant quantities of methamphetamine. *See, e.g.*, *United States v. Vaughan*, 450 F. App'x 757, 760–61 (10th Cir. 2011) (affirming district court's conclusion that two robberies shared similar physical elements); *United States v. Cardinas Garcia*, 596 F.3d 788, 797–98 (10th Cir. 2010) (affirming district court's Rule 404(b) finding when defendant's prior uncharged act involved a different drug); *United States v. Larson*, No. 2:04-CR-634 TS, 2006 WL 1348183, at *3 (D. Utah May 12, 2006) (finding that prior acts shared similar physical elements under Rule 404(b) when they both involved similar drug activity); Here, this factor

easily is satisfied. The February 2018 arrest evidence is similar to the January 2017 arrest. And it is relevant to Mr. Tennison's intent.

*Third*, the probative value must substantially outweigh the risk of unfair prejudice. This factor uses the familiar standard in Rule 403, *i.e.*, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403. The court has broad discretion to evaluate this factor. *United States v. Reddeck*, 22 F.3d 1504, 1508 (10th Cir. 1994). And, if evidence offered under Rule 404(b) satisfies the necessary factors, there is a "presumption that a defendant is protected from undue prejudice." *Id.* at 1510. "To be inadmissible under Rule 403, evidence must do more than damage the [d]efendant's position at trial, it must make a conviction more likely because it provokes an emotional response in the jury or otherwise tends to affect . . . the jury's attitude toward the defendant *wholly apart* from its judgment as to his guilt or [innocence]." *United States v. Burgess*, 576 F.3d 1078, 1099 (10th Cir. 2009) (internal quotations omitted). Here, intent plainly was at issue. Mr. Tennison's defense contended that he purchased the 247 grams of methamphetamine from the DTO to use it personally. This challenged the government's argument that he purchased the methamphetamine to distribute to others. The court found that the government's Rule 404(b) evidence was probative of Mr. Tennison's intent to distribute methamphetamine.

Mr. Tennison argues this evidence was "overwhelmingly prejudicial" to his case. But that is not the standard the court must apply. Mr. Tennison does not point to any aspect of the government's evidence that "makes a conviction more likely because it provokes an emotional response." *Id.* Surely the evidence was prejudicial to Mr. Tennison, but that's because the

evidence may have helped persuade the jury about his illegal intent. The evidence's probative value substantially outweighed any danger of unfair prejudice.

*Last*, the limiting instruction. The court may protect against any potential prejudicial with a limiting instruction. *See Davis*, 636 F.3d at 1299–1300 (affirming use of a limiting instruction that "explained to the jury the Rule 404(b) evidence should be considered only as it related to [the defendant's] intent"). Here, the court inquired, and Mr. Tennison requested a limiting instruction. The court gave it when the testimony about his February 2018 arrest was offered. And, it did so again in the Jury Instructions. Doc. 631 at 31 (Jury Instruction No. 27).

The February 2018 evidence satisfies all the necessary Rule 404(b) factors. The court did not err by admitting the evidence at trial.

### C. Did the court err in the language used by Jury Instruction No. 9 and Supplemental Jury Instruction No. 1?

Mr. Tennison argues that the court erred in including the word "only" as a qualifier for reasonable doubt in Jury Instruction No. 9 and the phrase "without violence to individual judgment" in Supplemental Instruction No. 1, the modified *Allen* instruction. Doc. 631 at 9; Doc. 636-1. But the court used pattern jury instructions for the Tenth Circuit Court of Appeals. *See* Tenth Circuit Criminal Pattern Jury Instructions §§ 1.05, 1.42. Nevertheless, the court recognizes that merely because the Tenth Circuit has "authorized distribution of these instructions" is not "an adjudicative approval" of their content. *United States v. Cortes-Gomez*, 926 F.3d 699, 707 n.5 (10th Cir. 2019) (affirming lower court's use of a Tenth Circuit Pattern Instruction). Instead, the court must review the sufficiency of the instructions on a "case-by-case" basis. *Id.* The court thus considers each instruction, below.

*First*, Mr. Tennison objects to use of the word "only" in Jury Instruction No. 9, which describes the reasonable doubt standard. He contends that describing "this fundamental building

14

block of criminal justice as 'only requires' substantially downplays the importance of the requirement and reduces it to a mere hurdle the jury must consider." Doc. 644 at 4. But the Circuit considered and rejected this very argument just three years ago in *United States v. Petty*, 856 F.3d 1306 (10th Cir. 2017).

In *Petty*, the defendant objected to the use of the word "only" in an identical jury instruction. *Id.* at 1310. The Circuit held that "the wording [d]efendant emphasizes 'cannot be sequestered from its surroundings.'" *Id.* (quoting *Victor v. Nebraska*, 511 U.S. 1, 16 (1994)). And, the Circuit "do[es] not read selection portions of a jury instruction in isolation, removed from their context." *Id.* at 1310–11. The Circuit discussed the context of the challenged language. It reasoned:

> The sentence immediately preceding the statement about which Defendant complains explains that "in criminal cases the law does not require proof that overcomes every possible doubt." The statement to which Defendant objects next contrasts the reasonable doubt standard with the notion of absolute certainty. The word "only" points out that proof beyond a reasonable doubt is not proof that overcomes all doubt. *See United States v. Kieffer*, 681 F.3d 1143, 1152 (10th Cir. 2012). The following sentence . . . then properly describes reasonable doubt as a "doubt based on reason and common sense after careful consideration of all the evidence in the case." *See id.* at 1159. In other words, the instruction first tells the jury what the reasonable doubt standard does not require, *i.e.*, "absolute certainty" of guilt, and second tells the jury what reasonable doubt is, *i.e.*, a doubt "based on reason and common sense."

*Id.* at 1311. The Circuit found no constitutional error in the instruction. *Id.* Jury Instruction No. 9 here is identical to the instruction the Circuit considered in *Petty*. Its use of "only" was not error here.

*Second*, Mr. Tennison objects to language used in the modified *Allen* instruction (Supplemental Instruction No. 1). He contends that instructing jurors that "it is your duty, as jurors to consult with one another and deliberate with a view toward reaching an agreement, if you can do so *without violence to individual judgment*" is "improper" and "in conflict with [Jury]

15

Instruction No. 9 requiring careful and impartial consideration of the evidence." Doc. 644 at 4 (emphasis added). Notably, Mr. Tennison does not argue that the timing of the instruction was unduly coercive. His arguments center around the language "without violence to individual judgment" in the modified *Allen* instruction.

When an *Allen* charge is used, "[t]he inquiry in each case is whether the language used by the judge can be said to be coercive, or merely the proper exercise of his common law right and duty to guide and assist the jury toward a fair and impartial verdict." *United States v. Arney*, 248 F.3d 984, 988 (10th Cir. 2001). Here, the court gave a modified *Allen* charge, that is, one asking "each juror, rather than only those in the minority, to carefully reconsider the evidence." *Id.* The Circuit has upheld the use of an *Allen* or modified *Allen* charge using similar language on many occasions. *See Arney*, 248 F.3d at 988 (finding use of "a modified *Allen* charge reduces the possibility of coercion"); *United States v. Reed*, 61 F.3d 803, 805 (10th Cir. 1995) (noting the "*Allen* charge eventually given was evenhanded; it did not presume that the majority favored a guilty verdict; and it emphasized that no juror was expected to yield a conscientious conviction on the evidence"); *United States v. Rodriguez-Mejia*, 20 F.3d 1090, 1092 (10th Cir. 1994) (concluding "neither the wording nor the timing of the district court's *Allen* instruction was coercive"); *United States v. McKinney*, 822 F.2d 946, 950 (10th Cir. 1987) (finding an *Allen* instruction that emphasized "that a juror may adhere to his or her personal conviction, if he or she believes it to be right, whatever that conviction might be" to be "of the type . . . approved by this court"). Notably, the Circuit has found the language of an *Allen* instruction containing the phrase "without violence to individual judgment" noncoercive. *Rodriguez-Mejia*, 20 F.3d at 1092.

The modified *Allen* instruction used is almost identical to those approved by the Circuit time and time again. It was "evenhanded" and did not presume a majority of jurors favored a guilty or not guilty verdict. *See Reed*, 61 F.3d at 805. The court concludes its modified *Allen* instruction was not coercive merely because it used the phrase "without doing violence to individual judgment."

**D. Do the cumulative errors that Mr. Tennison asserts require a new trial?**

"A cumulative-error analysis aggregates all errors found to be harmless and 'analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless.'" *United States v. Toles*, 297 F.3d 959, 972 (10th Cir. 2002) (quoting *United States v. Rivera*, 900 F.2d 1462, 1470 (10th Cir. 1990)). "There must be at least two errors before [the court] may find cumulative error." *United States v. Willis*, 826 F.3d 1265, 1280 (10th Cir. 2016) (citing *United States v. Thomas*, 749 F.3d 1302, 1307 (10th Cir. 2014)). Here, Mr. Tennison has failed to demonstrate any error. So, the court need not consider the effect of cumulative errors.

**IV. Conclusion**

For the reasons explained above, the court denies Mr. Tennison's Motion for New Trial (Doc. 644). The government presented evidence sufficient for rational jurors to find Mr. Tennison guilty beyond a reasonable doubt. And, Mr. Tennison has failed to show that the ends of justice require a new trial.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant Sean Tennison's Motion for New Trial (Doc. 644) is denied.

**IT IS SO ORDERED.**

**Dated this 28th day of January, 2020, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**